WILLIAM R. BRIDGES, as Assignee of JAMES H. CARPENTER, Individually and as Surviving Partner of the Firm of NEHER & CARPENTER, Respondent, *v.* THE NATIONAL BANK OF TROY, Appellant.

1. NATIONAL BANKING ASSOCIATIONS — SUCH ASSOCIATIONS HAVE NO LIEN UPON THEIR STOCK HELD BY STOCKHOLDERS INDEBTED TO THEM, OR UPON THE ASSETS BELONGING TO SUCH STOCK UPON LIQUIDATION. Under the decisions of the Federal courts, a national banking association

has no lien upon its stock as against indebted stockholders and is not authorized to adopt articles of association or by-laws which would give it such a lien; theref re, no equitable lien in favor of a national banking association can arise upon assets which the stock of the association represents, when such assets come to be distributed upon the liquidation of the affairs of the association.

2. SAME — A NATIONAL BANKING ASSOCIATION CANNOT OFFSET DEBT DUE FROM STOCKHOLDER AGAINST CLAIM OF STOCKHOLDER'S ASSIGNEE FOR LIQUIDATION DIVIDENDS PAYABLE UPON HIS ASSIGNOR'S STOCK. Where the owner of certain shares of the capital stock of a national banking association, organized under the laws of the United States, who was indebted to the bank as the indorser upon a draft which had been dishonored and duly protested for non-payment, made a general assignment for the benefit of creditors, and subsequent to the assignment the bank went into liquidation and after paying all its indebtedness and obligations directed a distribution of the balance of its assets, amounting in the aggregate to fifty-eight per cent upon the par value of its stock, and the assignee of such stockholder instituted an action against the bank to recover the distributive share of the bank's assets payable upon the shares of stock which formerly belonged to his assignor and were transferred to him by virtue of the general assignment the bank is not entitled to an equitable lien upon the liquidation dividend for the payment of such stockholder's debt, and is not entitled, therefore, to offset that debt against the assignee's claim to recover the fifty-eight per cent payable upon the shares of stock formerly held by his assignor.

*Bridges* v. *National Bank of Troy*, 106 App. Div. 616, affirmed.

(Argued April 25, 1906; decided May 8, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 15, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benjamin E. De Groot* for appellant. The plaintiff, as assignee for the benefit of creditors, is not a purchaser for value of the stock, and cannot, therefore, defeat the equity and set-off of the defendant against the dividends sued for. (*Curtis* v. *Leavitt*, 15 N. Y. 195 ; *Van Heusen* v. *Radcliffe*, 17 N. Y. 580 ; *Griffin* v. *Marquardt*, 17 N. Y. 58 ; *Welch* v. *Polley*, 177 N. Y. 117 ; *Richards* v. *La Tourette*, 119 N. Y. 54 ; *Lindsay* v. *Jackson*, 2 Paige, 281 ; *Holbrook* v. *A. F.*

*Ins. Co.*, 6 Paige, 220; *Jordan* v. *Sharlock*, 84 Penn. St. 366; Waterman on Set-off, § 132; *Matter of Hatch*, 155 N. Y. 401; *Hughitt* v. *Hayes*, 136 N. Y. 163; *Smith* v. *Felton*, 43 N. Y. 419.)

*Edward W. Douglas* and *George R. Donnan* for respondent.   The defendant has no right of offset against the stock certificates or their value by reason of the fact that they came into the hands of this plaintiff free and clear from any claim, demand, lien or offset whatsoever May 15, 1893, and that since that time they have not and could not become impressed with any such lien or offset.   (*German Ins. Co.* v. *T. Nat. Bank*, 162 N. Y. 163; 13 U. S. Stat. at Large, 110; *Conklin* v. *S. Nat. Bank*, 45 N. Y. 655; *Fera* v. *Wickham*, 135 N. Y. 230; *Matter of Hatch*, 155 N. Y. 406.)   There could not have been a set-off in this case because the debt of the defendant against the plaintiff's assignor, to wit, the sum of $5,830.60, did not become due until after the assignment. (*Martin* v. *Kunzmuller*, 37 N. Y. 396; *Fera* v. *Wickham*, 135 N. Y. 223.)

WILLARD BARTLETT, J.   On May 15, 1903, James H. Carpenter, individually and as surviving partner of a firm of bankers and brokers known as Neher & Carpenter, made a general assigment for the benefit of creditors to the plaintiff in this action.

Included in the individual property of James H. Carpenter which passed under this general assignment were forty shares of the capital stock of the defendant, a national banking association organized under the laws of the United States, and having its principal place of business and office in the city of Troy.

At the time of the assignment the assignor was indebted to the defendant bank in the sum of $5,830.60 as the indorser upon a draft which had been dishonored and duly protested for non-payment.

Subsequent to the assignment the defendant banking corporation went into liquidation and paid all its outstanding

indebtedness and obligations, and between December 15, 1898, and July 20, 1903, it directed through its officers a distribution of the balance of its assets, amounting in the aggregate to 58% upon the par value of its stock.

The present suit was instituted by the plaintiff as the general assignee of James H. Carpenter, to recover from the defendant $2,320.00 as the distributive share of the bank's assets payable upon the forty shares of stock which formerly belonged to his assignor, and were transferred to him by virtue of the general assignment. The bank defended on the ground that it was entitled to a lien upon such distributive share for the payment of the debt of $5,830.60 owing to the bank by Mr. Carpenter at the time of the assignment, and that it was entitled to offset that indebtedness against the plaintiff's claim. The court at Special Term rendered judgment in favor of the plaintiff for the amount sued for; and this appeal presents the question whether the defendant is entitled to an equitable lien upon the so-called liquidation dividend for the payment of Mr. Carpenter's debt, or is entitled to offset that debt against the assignee's claim to recover the 58% payable upon the forty shares of stock formerly held by the assignor.

Quite early in the history of national banking associations it was held by the Federal courts that a national bank had no lien upon its stock as against indebted stockholders and that it was not authorized to adopt articles of association or by-laws which would give it such a lien.

In the case of *Bullard* v. *Bank* (18 Wallace, 589) one Clapp was a stockholder in the National Eagle Bank in Boston. After acquiring his stock he borrowed money from the bank on several notes, some of which he failed to pay when due, on account of which non-payment he was adjudged a bankrupt. His trustee in bankruptcy, Bullard, claimed the stock as part of the bankrupt's assets and demanded of the bank that it should transfer the stock to him. The bank refused to comply with his request, asserting a lien on account of the bankrupt's indebtedness, whereupon Bullard,

the trustee in bankruptcy, sued the bank to enforce a. transfer. The case went to the Supreme Court of the United States on questions certified by the Circuit Court for the District of Massachusetts. The articles of association of the Eagle National Bank provided that the directors should have the power to make by-laws to prohibit the transfer of stock owned by any stockholder who might be a debtor to the association without the consent of the board, and the bank had adopted a by-law pursuant to said articles of association declaring that all debts actually due and payable to the bank by a stockholder requesting a transfer must be satisfied before such transfer should be made. The Supreme Court held in substance that the provisions of the articles of association and by-laws, to which reference has been made, attempting to give the bank a lien upon a debtor's stock, were inconsistent with the acts of Congress relating to national banking associations and were, therefore, invalid. This view was in accordance with the decision of the same court in *Bank* v. *Lanier* (11 Wallace, 369) where it was held that loans by national banks to their stockholders did not give a lien to the bank on the stock of such stockholders.

These cases and other decisions of the Federal courts erroneously supposed to be in conflict with them were fully reviewed and discussed in this court in the opinion of GRAY, J., in *Buffalo German Ins. Co.* v. *Third Nat. Bank of Buffalo* (162 N. Y. 163) where it was held that a national bank does not acquire and cannot enforce as against a *bona fide* purchaser an equitable lien upon its shares of capital stock for a debt which the stockholder has previously incurred to the bank. There the defendant bank had attempted by means of a by-law to declare that any liability of a stockholder to the association either as principal debtor or otherwise should be a lien upon his stock and all profits thereof and dividends. This by-law was declared to be unauthorized and void and ineffective to create any lien because in conflict with the National Banking Act. The judgment of this court has since been affirmed by the Supreme Court of the United States (193 U. S. 581).

These authorities would seem to dispose of the defendant's claim to an equitable lien ; for if no equitable lien can be acquired by a national bank upon its stock it is difficult to perceive upon what principle such a lien can be said to arise in reference to the assets which that stock represents when they come to be distributed upon the liquidation of the affairs of the institution.

The only other question in the case which we deem it neces- sary to discuss relates to the claim of the defendant that it is entitled to offset the assignor's indebtedness to the bank against the assignor's claim to the distributive share of the bank's assets payable in liquidation upon the shares of stock formerly held by the assignor which passed to the plaintiff under the general assignment. It is to be observed that so long as the bank continued in business and was a going con- cern no right existed on the part of any shareholder to receive or to acquire, by suit or otherwise, any portion of the bank's assets aside from the dividends regularly declared upon its earnings. The right to a distributive share in the balance of the assets after liquidation did not arise in favor of any stock- holder until long after the assignment by Mr. Carpenter of his shares of stock to the plaintiff. No cause of action for the recovery of such proceeds existed at the time when the assignment was made. The obligation on the part of the bank to pay this so-called liquidation dividend was not created while Mr. Carpenter was the owner of the stock. Under these circumstances we think the claim to a distributive share of the assets arising in behalf of the assignee as the present owner of the stock is not subject to any offset on account of the pre-existing indebtedness of the assignor to the bank. The position of the assignee is strictly analogous to that of an executor or administrator against whom a like offset is claimed in a suit based upon a cause of action arising after the death of his decedent. It is well settled that in an action by an executor or administrator upon a cause of action which has arisen since the death of his testator or intestate the defend- ant may not set off a debt against the testator or intestate

which debt existed and was payable during his lifetime. (*Fry* v. *Evans*, 8 Wendell, 530; *Mercein* v. *Smith*, 2 Hill, 210; *Merritt* v. *Seaman*, 6 N. Y. 168; *Patterson* v. *Patterson*, 59 N. Y. 574.)

The present case in many of its features closely resembles *Merchants' Bank of Easton* v. *Shouse* (102 Pa. State, 488), where a stockholder of the Merchants' Bank of Easton died indebted to the bank, and after his death the bank went into liquidation and declared a *pro rata* distribution of its assets to the stockholders. The bank sought to retain the proportion of its distributive assets applicable to the decedent's stock on account of his prior indebtedness, but it was held that the bank had no right so to do, either by way of lien or set-off. Mr. Justice GORDON, in delivering the opinion of the court, said : " It does not appear that, prior to the time of his decease, the bank, which was, as is alleged, in process of liquidation, had converted any part of its corporate assets, represented by the said stock, into money, and applied it on Shouse's indebtness; at all events, the dividends which form the subject of the present contention were declared after his death. Such being the case, unless before that time the bank had a lien upon that stock, it could have none afterwards which would be superior to that of the other creditors of this insolvent estate. In other words, if this stock passed to the administratrix unincumbered by any·lien of the bank, it must necessarily follow that she, as trustee of the general creditors, must be regarded as the owner of the money realized by its conversion, and, as such, be entitled to its custody. This view of the case would negative the bank's alleged right of set-off, since its claim on the fund could rise no higher than that of any other creditor."

The trial court was right in the case at bar in refusing to recognize the defendant's claim to any lien or right of set-off, and it follows that the judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT and VANN, JJ., concur ; CHASE, J., not sitting.

Judgment affirmed.