In the Matter of the Application of the PEOPLES SURETY COMPANY OF NEW YORK for a Voluntary Dissolution.

JESSE S. PHILLIPS and PETER J. COLLINS, as Receivers of the PEOPLES SURETY COMPANY OF NEW YORK, Appellants; UNION BANK OF BROOKLYN and Others, Respondents. (Appeal No. 2.)

Second Department, March 7, 1919.

**Banks and banking — when dividend upon capital stock of company held by insolvent bank in possession of State Superintendent of Banks cannot be set off against indebtedness of said bank to the company which had been dissolved.**

Where a bank owning capital stock of a surety company and holding other shares as collateral security for loans was upon its insolvency taken possession of by the Superintendent of Banks and thereafter the surety

company was dissolved and its receivers were directed to pay a dividend upon its stock, the dividend upon the stock held by the bank cannot be set off against its indebtedness to the surety company, because its stock at the time it was appropriated by the Superintendent of Banks to the payment of the debts of the bank was not subject to any setoff and constituted no claim against the surety company.

The same rule applies to shares of stock acquired after the Superintendent of Banks took possession.

MILLS and KELLY, JJ., dissented, with memoranda.

APPEAL by Jesse S. Phillips and another, as receivers, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 26th day of June, 1918, denying their application to set off against the indebtedness of the Union Bank of Brooklyn to Peoples Surety Company a dividend of fifty dollars per share upon 150 shares of the stock of the Peoples Surety Company, held by said Union Bank of Brooklyn.

*Henry C. Willcox* [*Allan C. Rowe* and *Frederick G. Dunham* with him on the brief], for the appellants.

*Joseph G. Deane* [*Philip A. Walter* with him on the brief], for the respondents.

JAYCOX, J.:

The facts herein are not in controversy, and are stipulated for the purpose of this motion. Briefly stated in chronological order they are as follows: That on November 12, 1908, the Union Bank was the owner of fifty-five shares of the capital stock of the Peoples Surety Company; that on April 5, 1910, said Union Bank was insolvent and possession thereof was taken by the Superintendent of Banks, pursuant to the Banking Law (Consol. Laws, chap. 2 [Laws of 1909, chap. 10], § 19; since amd. by Laws of 1910, chap. 452; now Consol. Laws, chap. 2 [Laws of 1914, chap. 369], § 57 *et seq.*); that such bank has not been dissolved and is still in possession of the Superintendent of Banks; that prior to April 5, 1910, ninety-five shares of the capital stock of the Peoples Surety Company were deposited with said Union Bank as collateral security for loans made by it, the certificates of said stock being assigned in blank; that section 51 of the Stock Corporation Law

(Consol. Laws, chap. 59; Laws of 1909, chap. 61) was not indorsed upon said certificates of stock. At the time the Superintendent of Banks took possession of said bank said surety company was a depositor and creditor of said bank in the sum of $38,652.21, and duly filed a claim therefor, which was allowed and dividends amounting to ten per cent paid thereon, leaving a balance due said surety company or its receivers of $34,786.99, which is still due and unpaid. The claims presented against the Union Bank are largely in excess of its assets. On February 4, 1914, the Peoples Surety Company was dissolved and is now in the possession of receivers duly appointed by the court. The loans above mentioned were not paid and the capital stock of the Peoples Surety Company was sold and purchased for the Union Bank by the then Superintendent of Banks. The receivers of the Peoples Surety Company have been directed by the court to pay a dividend of $50 per share.

The court below denied the right to a setoff, and based its decision upon the authority of *Bridges* v. *National Bank of Troy* (185 N. Y. 146). The appellants claim that this case should not be controlled by that decision, and cite *Matter of Hatch* (155 N. Y. 401); *Rothschild* v. *Mack* (115 id. 1); *Richards* v. *La Tourette* (119 id. 54); *Fera* v. *Wickham* (135 id. 223) and *Assets Realization Co.* v. *City of Buffalo* (118 App. Div. 571). They place their main reliance, however, upon the first and last cases above cited. In the *Hatch* case, A. S. Hatch & Co. as a firm and the individual members of the firm made an assignment for the benefit of creditors. At the time of the assignment Hatch & Co. and A. S. Hatch were both indebted to C. P. Huntington. These debts were due at that time. Prior to the assignment the assignors had made an arrangement with Huntington by which he was to undertake the collection of some judgments which Hatch & Co. and A. S. Hatch owned, under an agreement as to their division. At the time of the assignment nothing had been collected by Huntington; therefore, nothing was due from Huntington. Some time after the assignment, Huntington collected the judgments. He claimed the right to set off the debt owing from Hatch & Co. and A. S. Hatch against the moneys which he had collected. His right to this setoff was sustained in the Court of Appeals.

In the *Assets Realization Company* case the German Bank of Buffalo owed the city of Buffalo a large sum of money. It became insolvent and a receiver was appointed. Prior to this insolvency the city of Buffalo had damaged the property of the bank, but no right to recover for this damage existed. The Legislature passed an act by which the common council of the city was authorized to allow this claim. It was discretionary with the city whether to allow it or not. It, however, did allow it, and the claim as allowed was sold to the plaintiff in the action. When the plaintiff attempted to collect, the city claimed the right to set off the indebtedness of the German Bank against this claim. This right to set off was sustained by the Appellate Division in that action. In the *Bridges Case (supra)* one " Carpenter " owned forty shares of stock of the defendant bank, and at the same time owed the bank $5,830.60. Carpenter, being insolvent, made an assignment for the benefit of his creditors. Later, the bank became insolvent, went into liquidation and declared a dividend of fifty-eight per cent. The assignee of Carpenter claimed to be entitled to this dividend. The bank resisted the claim and claimed to be entitled to set off the indebtedness owing from Carpenter to the bank. This right to set off was denied by the Court of Appeals. The distinction between these cases is somewhat obscure. The distinction, however, is that in the two cases in which the setoff was allowed, the claims which were set off against each other were debts. That was their essential nature. In the *Bridges* case, where the setoff was denied, the shares of stock of the bank are not in their nature essentially a debt. Ordinarily a person holding stock does not have and does not claim the right to collect from the corporation the face value of his stock. He has the right to collect the dividends which may be declared upon it, and it is only when the corporation becomes insolvent and its assets are distributed that the stockholder becomes entitled to be paid anything for, or on account of, his stock by the corporation. Therefore, in the *Bridges* case it was an attempt to set off against a debt, existing at the time of the assignment, an indebtedness which did not exist at that time but which was subsequently created by operation of law. This distinction is indicated in the opinion. At page 151 the court says: " It is to be

observed that so long as the bank continued in business and was a going concern no right existed on the part of any shareholder to receive or to acquire, by suit or otherwise, any portion of the bank's assets aside from the dividends regularly declared upon its earnings. The right to a distributive share in the balance of the assets after liquidation did not arise in favor of any stockholder until long after the assignment by Mr. Carpenter of his shares of stock to the plaintiff. No cause of action for the recovery of such proceeds existed at the time when the assignment was made. The obligation on the part of the bank to pay this so-called liquidation dividend was not created while Mr. Carpenter was the owner of the stock. Under these circumstances we think the claim to a distributive share of the assets arising in behalf of the assignee as the present owner of the stock is not subject to any offset on account of the pre-existing indebtedness of the assignor to the bank."

It is also claimed that the assets of the Union Bank are still owned by it (*Lafayette Trust Co.* v. *Higginbotham,* 136 App. Div. 747), and that the surety company is for that reason entitled to a setoff. When the Superintendent of Banks took possession of the Union Bank it may not have worked a change of title to the property and assets of the bank, but it did appropriate such property and assets to the payment of the debts of the bank as they existed at that time. The Superintendent in charge was a liquidator authorized to collect claims in the name of the bank. At the time the Superintendent took charge no right of action upon the capital stock of the surety company existed; therefore, when that right of action subsequently arose, the previous indebtedness of the bank was not a setoff. The test is, was this surety company stock at the time it was appropriated to the payment of the debts of the Union Bank subject to any setoff? These shares of stock were subject to no setoff. They constituted no claim against the Peoples Surety Company. The shares the bank held it could have sold immediately prior to their going into possession of the Superintendent of Banks and given good title thereto. Immediately after taking possession, the Superintendent of Banks could have done the same thing. The creditors were, therefore, entitled to have this property

applied to the payment of their debts, undiminished by any setoff not existing at that time.

In *Assets Realization Co.* v. *City of Buffalo* (*supra*) there was no valid claim in existence at the time of the appointment of the receiver and, therefore, it was not an asset which passed to the receiver at that time. The insolvent bank was indebted to the city of Buffalo, and when a claim against the city was created it was immediately subject to a setoff. This, however, did not decrease the assets which came into the hands of the receiver at the time of his appointment. The funds appropriated to the payment of the debts of the bank were not thereby diminished. The same was true in the *Hatch* case. The judgments turned over to Huntington did not pass by the assignment, otherwise Huntington could not have collected the judgments. The first time any claim could be made in favor of the assignee was when Huntington collected the judgments, and as Huntington was a creditor, this claim against him immediately became subject to a setoff. As in the other case, the assigned estate was not diminished by allowing the setoff.

The shares of stock acquired after the Superintendent of Banks took possession and those owned at the time are in the same position. "The position of the assignee is strictly analogous to that of an executor or administrator against whom a like offset is claimed in a suit based upon a cause of action arising after the death of his decedent. It is well settled that in an action by an executor or administrator upon a cause of action which has arisen since the death of his testator or intestate the defendant may not set off a debt against the testator or intestate which debt existed and was payable during his lifetime." (*Bridges* v. *National Bank of Troy, supra.*)

The order appealed from should be affirmed, with ten dollars costs and disbursements.

Jenks, P. J., and Rich, J., concurred; Mills, J., dissented upon the ground that the bank when it failed owned the stock of the surety company, and the incidental right to any liquidation dividend thereon, and owed the debt to the surety company; and is, therefore, of opinion that the surety com-

pany should be allowed the setoff claimed, and that *Bridges* v. *National Bank of Troy* (185 N. Y. 146) may be distinguished in that therein the debtor had assigned the stock before the liquidation of the bank; KELLY, J., dissented on authority of *Assets Realization Co.* v. *City of Buffalo* (118 App. Div. 571).

Order affirmed, with ten dollars costs and disbursements.